UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

IN RE:

NICHOLAS J. STINCIC,             Case No. 16-10129-13

    Debtor.

## MEMORANDUM DECISION

This case is before the Court on the Motion of Johnson Bank for Relief from Stay. The Debtor, Nicholas Stincic ("Stincic"), claims the mortgage at issue was rescinded and, thus, there is no entitlement to relief from stay.

**I.  Jurisdiction**

The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(G) and (L). *See In re Bates,* 270 B.R. 455, 459 (Bankr. N.D. Ill. 2001). This opinion accordingly contains the court's findings of fact and conclusions of law.

**II.  Background**

Stincic owns certain real estate in Hayward, Wisconsin. He executed and delivered a note and mortgage to Johnson Bank on February 11, 2005. Stincic also signed a home equity line of credit agreement and another mortgage to Johnson Bank on July 11, 2007. Stincic ceased payments in September 2013.

Johnson Bank began foreclosure proceedings in state court on December 26, 2013. As of March 30, 2016, Johnson Bank says the balance due was $232,271.00 on the real estate note and mortgage and $37,024.66 on the home

equity mortgage. Johnson Bank argues that Stincic does not have funds to maintain the property, he has not offered adequate protection, and the property is burdensome and of inconsequential value to the estate.

Stincic now contends he did not receive the notice of right to rescind, and that in 2007 he delivered a rescission that was refused by the Bank. The Bank says the notice was provided and that it was acknowledged by Stincic. Despite the attempted rescission in 2007, Stincic continued to make payments for six years.

Johnson Bank filed for foreclosure in state court on December 26, 2013. Stincic raised his rescission defense in pleadings on May 15, 2015. At the fourth adjourned hearing on summary judgment on July 15, 2015, the state court ruled the defense was not timely brought and granted summary judgment. The state court reasoned:

> [I]f the defendant really thought he had rescinded this matter he would have been raising that issue much earlier. The answer that was filed was a very broad answer invoking the Truth in Lending Act sets forth no specifics whatsoever regarding what aspect of that act had not been complied with. Had he actually thought that he rescinded and wanted to push that issue that would have been raised more clearly and would have been addressed before now.

The state court also denied a motion to reconsider, finding the court made a discretionary decision to disallow the rescission defense without actually delving into the merits of rescission. Summary judgment was then entered in favor of the Bank.

Based on the decisions of the state court, the Bank argues that Stincic's opposition to relief from stay is a disguised attempt to review a state court

judgment barred by *Rooker-Feldman*. Stincic argues *Rooker-Feldman* does not apply because the state court did not consider the merits of the rescission defense. He also disputes its application because he says he does not seek to have the state court judgment overturned in this Court—he simply wants the Court to determine there was rescission. However, a finding that the mortgage was rescinded would be equivalent to a reversal of the state court.

### III.    Discussion

####    A.    *Rooker-Feldman*

The *Rooker-Feldman* doctrine holds the Supreme Court of the United States is the only federal court that may "review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). It applies when the state court judgment "is the source of the injury of which plaintiffs complain in federal court." *Id.* Simply stated, the *Rooker-Feldman* doctrine bars lower federal court jurisdiction over claims seeking review of state court judgments. *Taylor v. Fannie Mae*, 374 F.3d 529, 532 (7th Cir. 2004). If the *Rooker-Feldman* doctrine precludes a claim, the federal court lacks subject matter jurisdiction over the case. *Taylor*, 374 F.3d at 532. Where *Rooker-Feldman* applies, lower federal courts have no jurisdiction to address other affirmative defenses, including *res judicata*. *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 942 (N.D. Ill. 2005).

In applying the *Rooker-Feldman* doctrine, the central question is whether "the injury alleged by the federal plaintiff resulted from the state-court judgment itself or is distinct from that judgment." *Schmid v. Bank of Am., N.A.*

*(In re Schmid)*, 494 B.R. 737, 749 (Bankr. W.D. Wis. 2013) (quoting *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002)). "[F]ederal claims presented to the district court that . . . do not on their face require review of a state court's decision may still be subject to *Rooker-Feldman* if those claims are 'inextricably intertwined' with a state court judgment." *Taylor*, 374 F.3d at 532-33. The inquiry hinges upon whether the federal claim alleges the injury was caused by the state court judgment or, in the alternative, whether the claim alleges an independent prior injury that the state court failed to remedy. *Id.* at 533. The former is barred by *Rooker-Feldman*; the latter is not.

Once the court determines that a claim indirectly seeks to set aside a state court judgment, it must then determine whether the party raising the claim "did not have a reasonable opportunity to raise the issue in state court." *Id.* (citations omitted). If the issue could have been raised "in state court proceedings, the claim is barred under the *Rooker-Feldman* doctrine." *Id.*

To determine whether a party did not have a reasonable opportunity to raise an issue in state court, federal litigants must

> point to some factor independent of the actions of the opposing party that precluded the litigants from raising their federal claims during the state court proceedings. Typically, either some action taken by the state court or state court procedures in place have formed the barriers that the litigants are incapable of overcoming in order to present certain claims to the state court.

*Id.* (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999)).

4

At the fourth adjourned hearing on summary judgment, Stincic finally sought to raise the specific defense of rescission. While the state court did not reach the merits, it chose not to accept Stincic's rescission arguments because it found those arguments disingenuous. It also concluded there had been ample opportunity for Stincic to timely raise the defense. He failed to do so.

The question is whether those issues are inextricably intertwined with the state court ruling, whether the alleged injury was suffered only after the state court's decision, and whether there was the appropriate opportunity to raise the defense in the state court. In other words, would success in this case require overturning the state court's decision.

While Stincic may not have made any formal requests in the form of an adversary complaint to avoid the Bank's lien, that is the essence of what he seeks from this Court. He wants the Court to determine that the mortgage was properly rescinded. That is tantamount to avoiding the lien and a request to vacate the state court's judgment.

Stincic raised a generic Truth-in-Lending defense in his answer, but failed to pursue it until preparing opposition to summary judgment. The state court found that *Jesinoski v. Countrywide Home Loans, Inc.*, __ U.S. __, 135 S. Ct. 790, 190 L. Ed. 2d 650 (2015), did not "creat[e] a new cause of action being so significant that it would have caused [Stincic] to think that he shouldn't have been pursuing it earlier." Any lack of opportunity to raise the defense was at the hands of Stincic himself. The "reasonable opportunity" inquiry centers on difficulties caused by factors independent of the actions of the opposing

parties precluding a party from raising the federal claim. Again, Stincic raised the issue in his answer but did not pursue it until the fourth adjourned summary judgment hearing over a year later. As a result, the state court made a discretionary finding that Stincic waived the issue. This discretionary finding is the injury Stincic complains of. Following the Seventh Circuit's reasoning in *Taylor v. Fannie Mae*, the rescission issue was in fact raised in state court, which disposed of it, and he appealed.

By asking this Court to rule the first mortgage was properly rescinded, he is seeking to overturn the state court judgment and strip off the Bank's lien. Accordingly, his federal remedy is "inextricably intertwined" with the state court judgment. Success in this Court would allow Stincic to avoid the state court's judgment. Thus, *Rooker-Feldman* bars review.

  B. <u>*Res Judicata*</u>

Even if *Rooker-Feldman* does not bar review, in the interest of judicial economy, the Court may raise the issue of *res judicata sua sponte* even when a party fails to do so. *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996). *Res judicata* provides that a final judgment is "conclusive in all subsequent actions between the same parties as to all matters which were litigated or *which might have been litigated* in the former proceedings." *Marx v. M & I Bank of Watertown*, 17 F.3d 1012, 1014 (7th Cir. 1994) (emphasis added). Under Wisconsin law, there are three main elements of *res judicata*: (1) a final judgment on the merits by a court with proper jurisdiction in the former action, (2) identity of the parties, and (3) identity of the cause of action. *Id.*

6

First, neither party has disputed that the state court had jurisdiction to hear the foreclosure proceedings. The Wisconsin Constitution[1] and the Wisconsin Statutes[2] both provide that state circuit courts have jurisdiction over foreclosure proceedings. A "judgment of foreclosure and sale disposes of the entire matter in litigation and is a final judgment appealable as a matter of right . . . ." *Anchor Sav. & Loan Assoc. v. Coyle*, 148 Wis. 2d 94, 101, 435 N.W.2d 727, 730 (Wis. 1989). Any proceedings after the foreclosure judgment, i.e., "the sale itself, judicial confirmation, and the computation of the deficiency, 'are analogous to the execution of a judgment and simply enforce the parties' rights which have been adjudicated . . . .'" *Id.* (quoting *Shuput v. Lauer*, 109 Wis. 2d 164, 325 N.W.2d 321, 325 (Wis. 1982). Therefore, there is a final judgment in this case. The state circuit court granted a judgment of foreclosure. The sale has not been carried out, but that does not render the

---

[1] "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may provide by law. The circuit court may issue all writs necessary in aid of its jurisdiction." Wis. Const. art. VII, § 8.

[2] "The circuit courts have the general jurisdiction prescribed for them by article VII of the constitution and have power to issue all writs, process and commissions provided in article VII of the constitution or by the statutes, or which may be necessary to the due execution of the powers vested in them. The circuit courts have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court; and they have all the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carry into effect their judgments, orders and other determinations, subject to review by the court of appeals or the supreme court as provided by law. The courts and the judges thereof have power to award all such writs, process and commissions, throughout the state, returnable in the proper county." Wis. Stat. § 753.03.

7

judgment non-final. Stincic concedes the judgment is final. There is also an identity of parties. The parties are, in fact, identical. The remaining issue is whether there is an identity of the causes of action.

To determine whether there is an identity of the causes of action, Wisconsin uses the "transactional view." *Marx*, 17 F.3d at 1015. The question is "whether all of the claims arise out of one transaction or factual situation." *Id.* (quoting *Manu-Tronics, Inc. v. Effective Management Systems, Inc.*, 163 Wis. 2d 304, 471 N.W.2d 263, 267 n.6 (Wis. Ct. App. 1991). If both suits stem from the same transaction or factual situation, then the causes of action are considered identical under Wisconsin law. *Marx*, 17 F.3d at 1014. The courts "focus on facts, not legal theories, to determine whether an action is precluded." *Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003) (quoting *Froebel v. Meyer*, 217 F.3d 928, 934 (7th Cir. 2000)). The number of legal theories could be large, but if they all stem from the same factual scenario, they must all be brought at the same time. *Wilhelm*, 325 F.3d at 846.

Actual litigation is not required. The earlier judgment applies to all matters that were litigated or might have been litigated in the first proceeding. *Id.* at 846-47. In Wisconsin, the claim includes "any right or defense arising out of a 'transaction' or series of related facts that give rise to injury." *Lechnir v. Wells*, 157 F. Supp. 3d 804 (E.D. Wis. 2016).

An identity of causes of action exists here. This action relates to the same set of facts as the prior foreclosure action. Stincic offers a different legal theory here regarding rescission, but different legal theories are not enough to make

8

the causes of action distinct. Rather, the rescission theory is one defense to the foreclosure. In Wisconsin, a claim includes any defense that arises out of a transaction. *Id.*

*Res judicata* also encompasses all claims litigated or claims that could have been litigated. Stincic generally pled a Truth-in-Lending defense and could have brought his specific defense of rescission in the state court. In fact, he attempted to do so. But again, claim preclusion bars any matter that was actually litigated or might have been litigated in the first proceeding. The foreclosure action has already been decided in the state court. It would be improper for this Court to render a decision that has the effect of overturning the judgment by litigating a theory the Debtor did not fully present in state court. With all three elements of *res judicata* satisfied, this Court is precluded from hearing the issue of rescission.

C. <u>Relief from Stay</u>

Section 362(d)(1) of the Bankruptcy Code provides the court shall grant relief from stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." Section 362(d)(2) provides the court shall grant relief from stay as to property if (A) "the debtor does not have an equity in such property" and (B) "such property is not necessary to an effective reorganization."

Section 362(g)(1) provides the party requesting relief from stay has the burden of proof on the issue of the debtor's equity in property. The party opposing the relief, here, the Debtor, has the burden of proof on all other

9

issues. 11 U.S.C. § 362(g)(2). Courts have interpreted section 362(g)(2) to mean the movant must first establish a prima facie case, which then must be rebutted by the debtor. *In re Rexene Products Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

"'Cause' as used in § 362(d) has no clear definition and is determined on a case-by-case basis." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991), quoting *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). "Cause" under section 362(d)(1) specifically includes lack of adequate protection.

Section 361 describes various ways in which a party's interests may be adequately protected, including by requiring periodic cash payments, replacement liens, or the "indubitable equivalent" of the collateral. Cash payments can be ordered to the extent necessary to compensate for any decrease in value of the interest of the creditor. Likewise, additional or replacement liens can be provided as necessary to compensate for any decreases in value of the creditor's interest in the collateral. "The indubitable equivalent requires protection that will assure the creditor that its position will not be adversely affected by the stay." *Collier's on Bankruptcy* ¶ 362.07[3][d]. To determine if there is a lack of adequate protection depends on whether the secured party's interest is declining in value. If the creditor's interest is not declining in value, then it is not entitled to adequate protection. *In re Settlers' Hous. Serv., Inc.*, 505 B.R. 483, 495 (Bankr. N.D. Ill. 2014).

Johnson Bank has not received any payments from Stincic since September 2013 other than payments required by this Court during the period the Motion for Relief from Stay is under advisement. Interest and attorney's fees continue to accrue. As of March 30, 2016, the total due on the two mortgages is $269,295.66. The property's fair market value is reportedly $201,200, and Stincic does not dispute the value. Thus, the undisputed evidence confirms there is no equity cushion to adequately protect the Bank's interest. Stincic did not offer adequate protection and has only made payments pursuant to an order from this Court pending a decision on the Motion for Relief from Stay.

Court-ordered adequate protection payments were to begin on May 20 and continue to be due on the 20th of each month pending a decision on the Motion for Relief from Stay. The Bank has not notified the Court that these payments are in default, and it appears the payments are in an amount sufficient to cover continuing accrued interest.

1. Other Cause

"Cause" also extends beyond lack of adequate protection, including to circumstances in which litigation needs to be continued in another forum and petitions not filed in good faith. *See, e.g., In re Foster*, 283 B.R. 917, 919 (Bankr. E.D. Wis. 2002).

Other courts have found grounds for granting relief from the stay where the debtor failed to make several payments on their mortgage. *In re Stulley*, 108 B.R. 174, 178 (Bankr. S.D. Ohio 1989) (failed to make mortgage payments for

11

three years after filing bankruptcy); *In re Frascatore,* 98 B.R. 710, 721 (Bankr. E.D. Pa. 1989) (failed to provide adequate protection or make payments for a 29-month period); *In re Sierra,* 73 B.R. 322, 322-23 (Bankr. D.P.R. 1987) (failed to make payments for nine months after filing bankruptcy); and *In re Augustus Court Associates*, 46 B.R. 619, 620 (Bankr. E.D. Pa. 1985).

Still, others have explained that "[t]he term 'cause' as used in § 362(d)(1) requires more than simply nonpayment. The cause must be some form of malfeasance on the part of the debtor." *In re Lipply*, 56 B.R. 524, 528 (Bankr. N.D. Ind. 1986). No abusive conduct is present in the case at bar. The cause is presented as a lack of payment (other than the Court-imposed interim adequate protection payments) and that the dispute regarding rescission should be resolved in state court.

    2.    <u>Lack of Equity and Necessity to the Reorganization</u>

The moving creditor has the burden of proof on the issue of the debtor's equity in the property. 11 U.S.C. § 362(g)(1). Once the movant makes a prima facie case, the burden shifts to the debtor to prove the property is necessary to an effective reorganization.

    a.    <u>Equity</u>

Section 362(d)(2) of the Bankruptcy Code provides for relief from stay of an act against property if the debtor has no equity and the property is not necessary to an effective reorganization. "A debtor has no equity in the property for purposes of section 362(d)(2) when the debts secured by liens on the

12

property exceed the value of the property." 3 *Collier's on Bankruptcy* ¶ 362.07[4][a].

The Bank's Motion states the total debt stands at $269,295.66 as of March 30, 2016. The fair market value of the property is allegedly only $201,200. The fair market value is based upon a Sawyer County Property Inquiry. Stincic does not dispute these facts. His only defense is that the first mortgage was rescinded and is no longer attached to the property. If true, there would be a large amount of equity available. But as discussed above, this Court is not the proper place to rule on the rescission defense. Based upon the evidence currently before the Court, there is no equity in the property.

      b.    <u>Necessary for Reorganization</u>

The debtor has the burden of proof on the issue of whether the property is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2). Stincic must show not only that the property is necessary for a reorganization, but also that there is a reasonable possibility of a successful reorganization within a reasonable time. *United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 376, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

In many chapter 11, 12, and 13 cases, the real estate at issue will likely be necessary to the success of the plan. Thus, courts sensibly conclude that a home or vehicle is typically necessary for a debtor's effective rehabilitation. *See, e.g., In re Stratton*, 248 B.R. 177, 182 (Bankr. D. Mont. 2000). Section 362(d)(2) typically does not play a role in Chapter 13 cases, then, and the showing stated in *Timbers* is typically unnecessary.

Here, the property at issue is the Debtor's home. It appears Stincic attempts to rescind the Bank's first lien on the property to create equity in the property. Even if Stincic could rescind the mortgage, he must return the loan principal. The Seventh Circuit described the effects of rescission as follows:

> "Rescission is far from a cure-all in most mortgage refinance situations: it is 'a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor.'"

*Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011) (*citing Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008)). By rescinding, the "borrower must return the loan principal." *Id.* It would appear that since Stincic wishes to rescind, the property would not be necessary for reorganization, and as a result, Johnson Bank would be entitled to relief, since the practical effect is to return the debtor to the *status quo*. Even if the property is necessary for a reorganization, Stincic must show there is a reasonable possibility of a successful reorganization. *Timbers*, at 376.

Further, outside of his rescission argument, Stincic asserts no alternative defense to Johnson Bank's Motion for Relief from Stay. He merely argues the first mortgage was rescinded creating $110,000 in equity from which Johnson Bank is adequately protected. It is only through rescission of Johnson Bank's first mortgage that Stincic suggests the Bank is adequately protected, and asserts there is a possibility of a successful reorganization. Absent some other argument or evidence, Stincic has not satisfied his burden of proof that a possible avenue for a successful reorganization exists.

Addressing his payments to date, Stincic has already missed one payment. His liabilities significantly exceed the value of his assets. While Stincic's budget includes an amount equal to the ordered adequate protection payments for "home ownership expense," he does not budget for real estate taxes or homeowner's insurance and has only $320 per month in excess income, which does not include mortgage arrears or principal reductions. Nor does the record indicate Stincic proposes a possible reorganization by attempting to sell his non-homestead property in Wisconsin and Ohio. His Statement of Current Monthly Income and Calculation of Commitment Period demonstrates negative income. Such amounts are not sufficient to repay the amounts owed to the Bank and to make any payment to other creditors and for trustee fees. Stincic lists in his Statement of Current Monthly Income and Calculation of Commitment Period that Johnson Bank is owed a total of $56,249.94 in arrearages on the two notes. This assumes that the mortgage is rescinded. To cure this over a 60-month Plan, Stincic acknowledges he would have to pay $937.50. Stincic's monthly disposable income is negative even before this amount. Further, absent the Court's interim order for adequate protection, Stincic has not proposed an offer of adequate protection to Johnson Bank.

Without more, Debtor has not demonstrated a reasonable possibility of a successful reorganization and has not met his burden of proof.

**IV.** **Conclusion**

The dispute regarding rescission is a matter for the state court. There is neither equity nor any adequate protection. While the property is Stincic's home, he has failed to demonstrate any reasonable possibility of reorganization. For the foregoing reasons, the Motion for Relief from Stay is granted.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: September 29, 2016

> BY THE COURT:
>
> _____
> Catherine J. Furay
> U.S. Bankruptcy Judge